# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| **CRAIG L. DOCKERY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | 5:13-cv-0606-LSC |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

### Memorandum of Opinion

The plaintiff, Craig L. Dockery ("Dockery"), appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying him application for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI"). Dockery timely pursued and exhausted his administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

## I.   Introduction

Dockery was forty years old at the time of the Administrative Law Judge's ("ALJ's") decision. (Tr. at 55.) Dockery has a tenth grade education and has past

work experience as a cable installer/repairer, wrecker/tow truck driver, lubrication technician, and bagger. (Tr. at 92, 853–54.) Dockery alleges that his disability began on October 25, 2002, due to anxiety, panic attacks, severe anger problems, bipolar disorder, and shoulder and back pain (Tr. at 86.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity. *See id*. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in substantial gainful activity, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding

of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant

work, the evaluator will make a finding of not disabled. *See id.*

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work. *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the plaintiff can perform other work, the evaluator will find him not disabled. *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g). If the plaintiff cannot perform other work, the evaluator will find him disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ found that Dockery meets the non-disability requirements for a period of disability, DIB, and SSI and was insured through the date of his decision. (Tr. at 20.) He further determined that Dockery has not engaged in substantial gainful activity since the alleged onset of his disability. (*Id.*) According to the ALJ, Dockery had the following "severe" impairments: bipolar disorder, intermittent and explosive disorder, and a mixed personality disorder with paranoid, anti-social, and passive-aggressive traits. (*Id.*) The ALJ next determined that Dockery's impairments neither met nor were medically equal to any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 22.)

Because Dockery could not be considered "disabled" based solely on whether his impairments met or medically equaled those listed in 20 C.F.R. Part 404, the ALJ next assessed the effect of Dockery's alleged impairments on his RFC. The ALJ found that Dockery had an RFC that:

> [E]nabled him to perform a full range of work at all exertional levels but with the following exertional limitations: He can perform unskilled work. Due to deficiencies of concentration, persistence, and pace, he can have no more than occasional interaction with supervisors and co-workers and should have no interaction with the general public.

(Tr. at 24.) The ALJ determined that Dockery's RFC did not prevent Dockery from performing past relevant work as a lubrication technician. (Tr. at 26.) Consequently, the ALJ concluded that Dockery was not "under a disability" as defined in the Social Security Act through the date of the decision. (Tr. at 28.)

## II.  STANDARD OF REVIEW

This Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). This Court gives deference

to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d

622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

### III. Discussion

Dockery alleges that the ALJ's decision should be reversed and remanded for two reasons. First, Dockery argues that the ALJ erred in not granting substantial weight to the opinion evidence of two examining physicians. Second, Dockery argues that the ALJ improperly discredited Dockery's testimony concerning the severity of his symptoms.

#### A. Weight Given to Medical Opinions

Dockery argues that the ALJ improperly rejected the opinions of two examining psychologists, Dr. Jon Rogers and Dr. John Haney. Dockery further argues that, because of this error, the ALJ's decision is not supported by substantial evidence. Dr. Rogers examined Dockery at the request of his counsel on January 9, 2009. Dr. Rogers reported that Dockery suffered from "marked" limitations in his ability to deal with changes in a routine work setting; to understand, remember, and carry out simple instructions; to respond to customary work pressures; and to maintain attention, concentration, or pace for periods of at least two hours. (Tr. 388–89.)

However, the ALJ rejected Dr. Rogers's opinion, citing it as inconsistent with the opinions found in the treatment notes of Dockery's treating physicians, Dr. Edward Love and Dr. Daniel McDonough, who combined to provide in-depth therapy sessions for Dockery from May 2007 to at least July 2011.[1] According to the ALJ, these doctors' treatment notes showed that Dockery's condition significantly improved through therapy and medication. (Tr. 25–26.)

The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. § 404.1527(d). An ALJ is not required to afford special deference to opinions from non-treating medical sources. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). However, an ALJ is required to explain the weight given to different medical opinions, regardless of whether the source in question was a treating physician. *See Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).

In determining the weight to give Dr. Rogers's opinion, the ALJ noted that Dr.

---

[1] Both the ALJ and the parties attribute all treatment notes to Dr. Love. However, the medical records show that Dr. McDonough became Dockery's primary therapist in 2009.

Rogers examined Dockery only once. (Tr. 25.) The ALJ emphasized that Dr. Rogers's assessment was inconsistent with the treating physicians' notes, which indicated that Dockery had improved significantly from August 2007 to July 2011. (Tr. 25–26.) As the ALJ noted, Dr. McDonough wrote in November 2009 that Dockery's symptoms relating to his intermittent explosive disorder and anxiety had "basically stabilized." (Tr. 23, 674.) The ALJ pointed out that Dr. McDonough had a similar opinion in July 2011, as Dr. McDonough stated that Dockery's "anxiety [was] in good control overall."(Tr. 621.) Finally, the ALJ noted that Dr. Rogers stated in his report that he relied primarily upon Dockery's subjective complaints in reaching his opinion. (Tr. 25.) Thus, the ALJ sufficiently explained his reasons for discounting Dr. Rogers's opinion.

While the ALJ's decision includes a thorough discussion of Dr. Rogers's examination, it contains only a passing reference to Dr. Haney's findings. Dr. Haney performed a one-time consultative examination of Dockery on January 12, 2007, and diagnosed Dockery with bipolar disorder, possible intermittent explosive disorder, and polysubstance abuse, in early partial remission. (Tr. 225–26.) Haney stated that, in his opinion, Dockery's "ability to function in most jobs appeared moderately to severely impaired," and that Dockery's condition would "probably remain unchanged in the

next six to twelve months." (Tr. 226.)

While ALJ mentioned Dr. Haney's January 2007 assessment in his decision, he did not explain the weight given to Dr. Haney's opinion. An ALJ's failure to explain the weight given to a medical opinion can constitute reversible error. *See Sharfarz*, 825 F.2d at 279. However, when an ALJ's failure to explain the weight given to a medical source opinion does not affect his final decision, that error is harmless. *See Caldwell v. Barnhart*, 261 F. App'x 188, 191 (11th Cir. 2008) (stating that an ALJ's failure to explain the weight given to a medical opinion is harmless error when the overlooked medical opinion does not conflict with the medical evidence relied upon or with the ALJ's ultimate finding).

Here, the ALJ relied primarily upon Dr. Love and Dr. McDonough's treatment notes. These notes do not begin until May 2007 and show what the ALJ considered to be a gradual improvement over the course of four years in Dockery's ability to manage his impairments. According to the ALJ, Dr. Love's and Dr. McDonough's treatment notes show progress that occurred well after Dr. Haney's January 2007 examination of Dockery. Therefore, there is no inconsistency between the two medical sources, and the ALJ's failure to explain the weight given to Dr. Haney's report is harmless error. Furthermore, Haney's opinion—that Dockery's ability to

work was "moderately to severely impaired"—is based on a one-time examination, does not offer an in-depth explanation or basis, and concerns a matter reserved to the Commissioner for final determination. *See* 20 C.F.R. § 404.1527(d)(1)–(3). The Eleventh Circuit has suggested that an ALJ's failure to explain the weight given to such evidence is, at worst, harmless error. *See Tillman v. Comm'r, Soc. Sec. Admin.*, 559 F. App'x 975, 975–76 (11th Cir. 2014) (finding that the ALJ's failure to explain the weight given to a medical opinion "did not affect the result in [claimant's] case," and specifically noting that the medical source in question "did not offer any detailed explanation supporting [the] opinion," and that the opinion "concerned matters ultimately reserved to the Commissioner for final determination").

In reaching his determination, the ALJ chose to rely primarily on Dr. Love's and Dr. McDonough's treatment notes, which are replete with opinions indicating that Dockery's impairments were well-managed through therapy and medication.[2] A treating physician's opinion is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440

---

[2] While the treatment notes also indicate that Dockery occasionally had lapses in anger management, the ALJ referenced many of these in reaching his decision, and crafted an RFC that limits Dockery's interactions with the public and co-workers (*See* Tr. 23–24.)

(11th Cir. 1997) (internal quotations omitted)). Thus, the positive opinions concerning Dockery's condition found in the treatment notes constitute substantial evidence in support of the ALJ's decision.

### B.     The ALJ's Evaluation of Dockery's Credibility

Dockery also argues that the ALJ's decision should be reversed and remanded because the ALJ failed to properly apply the Eleventh Circuit's "pain standard" when assessing Dockery's subjective complaints of symptoms. Dockery testified that he routinely has violent thoughts, that his medication causes sleepiness, and that he is unable to concentrate on simple tasks. (Tr. 824–26, 846–52.) Dockery further alleges that, due to his anxiety, he does not usually leave the home and that he is prone to "black out" when he becomes enraged. (Tr. 822, 846–52.)

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish a disability based upon pain and subjective symptoms, the Eleventh Circuit has set forth a three-part standard: "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that the confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such

a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

Meeting the pain standard does not automatically end the ALJ's analysis if the ALJ rejects the plaintiff's complaints for lack of credibility. *See Foote*, 67 F.3d at 1560-61 (meeting the judicial pain standard is only a threshold inquiry and the ALJ may reject the complaints by offering specific reasons); *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("After considering a claimant's complaints of pain [under the above standard], the ALJ may reject them as not credible, and that determination will be reviewed for substantial evidence.") (citing *Wilson v. Heckler*, 734 F.2d 513, 517 (11th Cir. 1984)). The ALJ must articulate explicit and adequate reasons for discrediting the claimant's subjective testimony of pain and other symptoms. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. R. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67

F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court] to conclude that [the ALJ] considered her medical condition as a whole." *Id*. (internal quotations omitted).

The ALJ found that Dockery's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Dockery's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC assessment. (Tr. at 24.) In discrediting Dockery's testimony, the ALJ emphasized that it was inconsistent with the treatment notes of Dr. McDonough and Dr. Love. (Tr. 23, 26.) The treatment notes indicate that Dockery responded well to his medications: Dr. McDonough reported that claimant "actually likes [a new medication] which helps him keep calm and gives him some energy during the day," and that Dockery was "doing well in regards to his underlying irritability and mood symptoms." (Tr. 629, 666.) The ALJ cited numerous other comments made by Dockery's doctors suggesting that his condition was under control. (Tr. 23, 26.) Improvement of symptoms while on medication can suggest that a plaintiff's allegations are not credible. *See Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir. 1993) ("If an impairment can be controlled by

treatment or medication, it cannot be considered disabling."); *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986) (noting that a symptom reasonably controlled by medication or treatment is not disabling).

In making his credibility determination, the ALJ cited to medical opinions from Dockery's treating physicians and statements from Dockery that conflicted with his testimony about the severity of his symptoms. These sources constitute "substantial evidence" upon which the ALJ may base his credibility determination. Furthermore, while Dockery argues that the ALJ's credibility assessment failed to account for the longitudinal record, the ALJ's decision includes a summary of Dockery's medical history dating back to 1995. An ALJ is not required to mention every piece of evidence when making a credibility assessment, and the fact that the ALJ chose to stress the more recent medical evidence—treatment notes from Dockery's primary physicians made over the course of four years—is not grounds for reversal.

Dockery also argues that the ALJ improperly discredited his testimony on the basis of his poor work history and one-time trip to a matinee of a movie. Dockery argues that his poor work history is a result of his anger and anxiety problems. However, Dockery indicated as part of his disability application that he quit his job at a service station in 2005 because of a shoulder injury and his inability to secure reliable

transportation to work, rather than problems related to his impairments. (Tr. 95.) While the ALJ used Dockery's one-time trip to the movies as a reason to doubt his testimony about the severity of his symptoms, the ALJ's RFC determination nevertheless accounts for Dockery's anxiety towards interacting with strangers . (Tr. 24.) Furthermore, as this Court has already explained, the statements found in the treating physicians' notes establish a sufficient basis for the ALJ to discredit Dockery's testimony.

In sum, the ALJ specifically addressed Dockery's allegations of symptoms and provided explicit and detailed reasons why the evidence that Dockery offered was not fully credible. *See Allen v. Sullivan*, 880 F.2d 1200, 1203 (11th Cir. 1989) (ALJ properly discredited the plaintiff's testimony where he specifically articulated at least three reasons for rejecting the plaintiff's subjective complaints). For the reasons discussed, substantial evidence supports the ALJ's conclusion that Dockery's impairments are not of such intensity or persistence that they prevent him from performing full range of work with the appropriate non-exertional limitations, including his previous work as a lubrication technician. (Tr. at 24, 26.)

## IV. CONCLUSION

Upon review of the administrative record, and considering all of Mr. Dockery's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

A separate Order will be entered.

Done this 12th day of February 2015.

                              L. SCOTT COOGLER
                       UNITED STATES DISTRICT JUDGE
                                                                      [177822]